IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 4, 2018

**STATE OF TENNESSEE v. JASON WHITE**

**Appeal from the Criminal Court for Shelby County**
**No. 17-01568        J. Robert Carter, Jr., Judge**

_____

**No. W2018-00329-CCA-R3-CD**

_____


Jason White, Defendant, was convicted of one count of conspiracy to possess methamphetamine with the intent to sell within a drug-free zone and one count of conspiracy to possess methamphetamine with the intent to deliver within a drug-free zone. Co-defendant Kristina Cole and Co-defendant Montez Mullins were also convicted of one count of conspiracy to possess methamphetamine with the intent to sell within a drug-free zone and one count of conspiracy to possess methamphetamine with the intent to deliver within a drug-free zone in the same trial. *See State v. Kristina Cole and Montez Mullins*, No. W2017-01980-CCA-R3-CD, 2018 WL 5810011, at *1 (Tenn. Crim. App. Nov. 5, 2018), *perm. app. filed*. The trial court sentenced Defendant to sixty years as a career offender with release after service of 100% of the sentence. On appeal, Defendant asserts that: (1) the trial court erred in allowing Defendant's trial counsel to represent Defendant despite a conflict of interest; (2) the State constructively amended the indictment by obtaining a superseding indictment; (3) the trial court erred in admitting: testimony from Andrew Brown; Co-defendant Montez Mullins' confession; text messages that Detective Mark Gaia retrieved from Co-defendant Cole's three cell phones; and marijuana confiscated from Mr. White's vehicle; (4) the trial court erred in admitting testimony from Detective Gaia without instructing the jury about witness credibility; (5) the State's introduction of Co-defendant Mullins' confession violated *Bruton v. U.S.*, 391 U.S. 123 (1968); (6) the trial court erred in denying Defendant's motion to sever his case from Co-defendants Cole and Mullins; (7) the evidence was insufficient for a rational juror to have found Defendant guilty; and (8) the State committed prosecutorial misconduct during closing arguments. After a thorough review of the facts and applicable case law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**


ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jason White, Henning, Tennessee, Pro Se (at sentencing, motion for new trial, and appeal); Claiborne Ferguson, Memphis, Tennessee (at trial).

Herbert H. Slatery III, Attorney General and Reporter; Sophia Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

On March 30, 2017, the Shelby County Grand Jury indicted Defendant on one count of conspiracy to possess methamphetamine with the intent to sell within a drug-free zone and one count of conspiracy to possess methamphetamine with the intent to deliver within a drug-free zone.

At trial, Detective Mark Gaia testified that he worked for the Bartlett Police Department ("BPD"). In February 2016, he worked in the narcotics unit of the BPD. Around February 2, 2016, Detective Gaia received a phone call from a detective in Visalia, California, regarding a package that contained methamphetamine that had been shipped from California to an address in Bartlett, Tennessee. The package was addressed to "Bailey Green" and listed 2552 Linwood as the address.[1] After the BPD intercepted the package, officers weighed the package and tested the contents. Detective Gaia testified that the package contained a bag of children's clothing and one pound of methamphetamine. He explained that a pound of methamphetamine would be worth $12,000 to $15,000.

Detective Gaia obtained a search warrant, and Detective Jeffrey Swindol conducted a controlled delivery of the package to Co-defendant Cole's residence at 2552 Jenwood. After Co-defendant Cole accepted the package, Detective Gaia knocked on the door of her residence, and Co-defendant Cole let him inside. Once inside, Detective Gaia observed the package inside the house. Co-defendant Cole gave him permission to search the residence. During the search, Detective Robert Christian found a photograph on the nightstand in Co-defendant Cole's bedroom that depicted a man wearing a prison uniform. When Detective Gaia asked Co-defendant Cole about the photograph, she stated that it was her ex-boyfriend, "Timothy Smith," whose birthday was March 11.

---

[1] Detective Gaia determined that there was not a valid address of 2552 Linwood in Shelby County. He learned that the correct address was 2552 Jenwood.

Detective Gaia confirmed that the individual in the photograph was Defendant based on "numerous handwritten letters that were addressed to [Co-defendant] Cole from [Defendant] at the Riverbend Maximum Institution near Nashville."

Detective Gaia collected three cell phones from Co-defendant Cole: a Verizon HTC phone, a Samsung phone, and an LG phone. He also found a laptop computer. He observed that Co-defendant Cole had recently tracked a package on the Fed-Ex website from the search history of the computer. The tracking number of the package that Co-defendant Cole tracked electronically matched the number of the package that the BPD intercepted and delivered to Co-defendant Cole's residence. Co-defendant Cole denied knowing anyone named Bailey or knowing the contents of the package. Detective Gaia identified evidence of several forms of communication between Co-defendant Cole and Defendant, including a handwritten letter from Defendant to Co-defendant Cole. Detective Gaia also found a receipt for a money order to Defendant, which listed his inmate booking number, and a receipt for a purchase by Co-defendant Cole to Defendant through Union Supply Direct, Inmate Direct Sales. Detective Gaia observed several PayPal and MoneyPak cards in the residence.

While Detective Gaia was discussing the contents of the computer with Co-defendant Cole, the LG cell phone continuously rang. The caller was listed in Co-defendant Cole's phone as "Line Boo Other[.]" When Detective Gaia picked up the phone and hit the answer button, Co-defendant Cole stated that she wanted an attorney. After Detective Gaia placed Co-defendant Cole under arrest, Dustin White[2] pulled into the driveway of Co-defendant Cole's residence. As he spoke with Mr. White, Detective Gaia noticed that the same phone number that called Co-defendant Cole's phone was also continuously calling Mr. White's phone. Detective Gaia noted that Mr. White was Defendant's brother and that the phone number that called Mr. White's phone was listed as "J." Detective Gaia identified a Google Earth picture that showed Co-defendant Cole's residence was approximately 200.62 feet away from Raleigh-Bartlett Meadows Elementary School.[3]

On Co-defendant Cole's HTC cell phone, Detective Gaia observed that Co-defendant Cole sent a photograph of herself to (731) 693-6346. Co-defendant Cole also received a photograph of Defendant from (901) 573-4218. The photograph message was signed "Da Junk Yard." Detective Gaia noted that the photograph of Defendant appeared

---

[2] Detective Gaia refers to this individual as "Dustin Van White." However, this individual is referred to as "Dustin White" in the remainder of the transcripts. For purposes of clarity, we will refer to him as Mr. White.

[3] Sergeant Terrence Riley also testified that Co-defendant Cole's residence at 2552 Jenwood was located within 1,000 feet of Raleigh Bartlett Meadows Elementary School.

to have been taken in a jail cell. Detective Gaia also examined the contact list and text messages on Co-defendant Cole's HTC cell phone. He observed that the contact number for "Jason White" and "Boo" were the same—(731) 217-2745. He also noted that the contact number for "New Boobear" was (731) 694-7388.

When Detective Gaia examined Co-defendant Cole's Samsung cell phone, he observed text message exchanges with (731) 694-9127. This phone number used a signature of "COUNTRY CRAZY[.]" Co-defendant Cole texted the following message to this number: "Hey baby. This is my other number. Lock me in. Love I baby . . . [.]" Throughout Co-defendant Cole's numerous text message exchanges with this phone number, she frequently referred to the recipient as "BooBear." Co-defendant Cole also referred to the recipient of messages to (731) 499-3517 as "BooBear." This phone number used "L.L.K.N. J.Y.D." as its signature, and Co-defendant Cole saved this number in her contact list as "New BooBear." On January 28, 2016, Co-defendant Cole sent the following message to "New BooBear": "$125 - 890 884 6154[.]" Detective Gaia stated that Co-defendant Cole was informing Defendant that she loaded $125 into account number 890-884-6154. Detective Gaia also discovered contacts in Co-defendant Cole's Samsung cell phone named "BooBear Other Line[,]" connected to (731) 394-1929 and "BooBear Second[,]" connected to (615) 917-3749.

Detective Gaia also examined Co-defendant Cole's LG cell phone and found a photograph of Defendant that was sent from (731) 693-2611. The sender of the photograph used the following signature: "Da Junk Yard." Co-defendant Cole sent messages to this phone number, and referred to the recipient as "BooBear." Co-defendant Cole also exchanged text messages with (731) 443-6670 and, again, referred to the recipient of her messages as "BooBear." In May 2015, Co-defendant Cole texted (615) 564-0303 on her LG cell phone and referred to the recipient as "BooBear." The recipient used the following signatures: "$SAME N***A SINCE DAY1$" or "$Loyalty Bring Royalty$[.]" In July 2015, Co-defendant Cole began exchanging text messages with (731) 694-9127, and she referred to the recipient as "BooBear." The recipient used the signature of "COUNTRY CRAZY[.]" Co-defendant Cole also exchanged text messages with contacts identified as "New BooBear" connected with (731) 499-3517 and "Line Boo Other" connected with (615) 917-3749. Co-defendant Cole sent the following text messages to the "Line Boo Other" contact on January 27, 2016: "Sender: Kristina Cole, Memphis TN Control #864-588-3690, $100" and "$75 - 756 663 9348 $30 - 748 829 1871[.]" On February 3, 2016, the day of the controlled delivery, Co-defendant Cole sent the following text messages to "Line Boo Other": "Package arrived[,]" "They put the

4

wrong street name. Lucky they knew what it was suppose [sic] to be[,]" and "What do you want me to do with it?"[4]

Detective Gaia testified that he listened to the recordings of Co-defendant Cole's outgoing calls while she was incarcerated.[5] Detective Gaia identified nineteen phone calls where Defendant was part of the conversation with Co-defendant Cole. In the tenth phone call on the recording, Co-defendant Cole called a phone number and her older son, Burnest, answered the phone. Burnest connected a third party to the call; Detective Gaia identified this caller as Kimberly White, Defendant's mother. Ms. White then connected a caller that Detective Gaia identified as Defendant to the call with Co-defendant Cole by speaker phone. During the call, Defendant told Co-defendant Cole that "[w]e got some money[,]" "we are going to get a lawyer[,]" and "we are going to get you out." Defendant also states that "Tez did this s**t" and that "Tez lied to [Co-defendant Cole]" and told Co-defendant Cole that the package contained jewelry. Defendant told Co-defendant Cole that Co-defendant Mullins was "filling out an affidavit right now" to give to Co-defendant Cole's attorney. Defendant also stated that Co-defendant Mullins told Co-defendant Cole to check the "numbers" and that Co-defendant Mullins was going to "admit to it." At the end of the phone call, Defendant told Co-defendant Cole to "[c]all Momma's phone right now, baby." Co-defendant Cole then called a phone number that Detective Gaia identified as Ms. White's phone. During this phone call and other phone calls, Ms. White connected Defendant to the call via speaker phone. During the thirteenth recorded call, Defendant told Co-defendant Cole, "They can't hold you accountable for what you don't know." During several of the calls, Co-defendant Cole referred to Defendant as "Timothy." Additionally, in several calls, Defendant and Co-defendant Cole discussed accessing PayPal accounts.

On cross-examination, Detective Gaia clarified that the managers at the California Fed-Ex facility opened the package because they suspected that it contained contraband. A detective in California then contacted the BPD regarding the package. Detective Gaia agreed that the text message exchanges between Co-defendant Cole and Defendant were not illegal on their face. He also agreed that transferring money into a PayPal account or using a prepaid credit/debit card was not illegal. He stated that Defendant used at least ten different phone numbers to communicate with Co-defendant Cole. However,

---

[4] On cross-examination, Detective Gaia stated that he sent the final text message to "Line Boo Other" on Co-defendant Cole's LG phone. He explained that he sent the text message on Co-defendant Cole's phone because he was attempting to arrange for the recipient of the package to pick it up.

[5] Detective Michael Harber of the Shelby County Sheriff's Office explained that, when an inmate uses a phone while incarcerated, the inmate must use a personal identification number before placing a call. Detective Harber identified a recording of phone calls that Co-defendant Cole made while she was incarcerated.

Detective Gaia could not confirm that Defendant had exclusive control of the phone numbers.

Special Agent Peter Hall testified that he worked for the Tennessee Bureau of Investigation as a forensic chemist. After the trial court declared Special Agent Hall to be an expert, he stated that the package delivered to 2552 Jenwood contained 441.17 grams of methamphetamine, a Schedule II controlled substance.

Detective Christian testified that he worked in the Investigative Services Narcotics Unit of the BPD. On February 3, 2016, Detective Christian assisted Detective Gaia with executing the search warrant on the residence at 2552 Jenwood. Detective Christian found the photograph of Defendant on Co-defendant Cole's nightstand. On February 22, 2017, Detective Christian interviewed Co-defendant Mullins. He stated that he did not believe that Co-defendant Mullins was completely truthful during the interview because Co-defendant Mullins said "honestly" and "I swear to God" frequently.

During his interview with Detective Christian, Co-defendant Mullins stated that, at the end of January 2016, he was incarcerated at the "Northeast penitentiary" when another inmate, "Angel," approached him and offered to pay him $600 if Co-defendant Mullins provided him with a mailing address in Memphis. Angel informed Co-defendant Mullins that the package would contain "ice," or crystal methamphetamine. Co-defendant Mullins contacted Co-defendant Cole and asked if he could send a package with a gift of jewelry for his mother to her address. Co-defendant Cole agreed, and Co-defendant Mullins gave her address to Angel. Angel then gave Co-defendant Mullins $300 through PayPal and promised to give him an additional $300 after the package was delivered. Angel later provided Co-defendant Mullins with a tracking number for the package, which Co-defendant Mullins gave to Co-defendant Cole. A few days later, Co-defendant Mullins received a text message from Co-defendant Cole informing him that the package arrived, despite the fact that the package listed the wrong address. Co-defendant Mullins informed Angel that the package arrived and attempted to call Co-defendant Cole. After he was unable to reach Co-defendant Cole, Co-defendant Mullins called Co-defendant Cole's "husband," Defendant.

Co-defendant Mullins asserted that Co-defendant Cole was unaware that the package contained methamphetamine. Co-defendant Mullins explained that he met Co-defendant Cole through Defendant. Co-defendant Mullins met Defendant while they were incarcerated in Morgan County in 2012. He also stated that Co-defendant Cole called him "Boo Bear." He said that he did not have a romantic relationship with Co-defendant Cole.

Investigator Andrew Brown testified that he worked for the Tennessee Department of Correction as an investigator in the Office of Investigation and Complaints.

6

Investigator Brown met Defendant while Defendant was incarcerated at the Riverbend Maximum Security Institution. On February 3, 2016, Investigator Brown received a phone call from Detective Gaia about Defendant. Based on his conversation with Detective Gaia, Investigator Brown and some other employees went to Defendant's jail cell and observed Defendant flushing a cell phone down his toilet. Investigator Brown confiscated a cell phone charger but was unable to retrieve the cell phone. Investigator Brown stated that one of the signatures that Defendant used to communicate with Co-defendant Cole, L.L.K.N. J.Y.D., meant "Long Live King Neal Junk Yard Dog[.]" "Long Live King Neal" referred to the founder of the Traveling Vice Lords, Neal Wallace. "Junk Yard Dog" referred to a faction of the Traveling Vice Lords that was organized by Charles Thompson, also known as "Country." Investigator Brown testified that there was no legitimate reason for an inmate to need a PayPal or Green Dot account. He explained that inmates could receive financial help from friends and family members through JPay, but inmates did not need a non-authorized cell phone to receive funds through JPay and non-inmates could send money to an inmate through JPay with a computer or smart phone. In Investigator Brown's experience, inmates used PayPal or Green Dot accounts to purchase contraband items such as tobacco products, narcotics, cell phones, or homemade weapons. He acknowledged that he did not know what the specific transactions noted on Co-defendant Cole's phone were for.

Co-defendant Cole, Defendant, and Co-defendant Mullins decided to not testify. Defendant was convicted of two counts of conspiracy to possess methamphetamine in a drug-free zone with the intent to sell or deliver. Prior to sentencing, Defendant waived representation of counsel and proceeded to sentencing pro se. The trial court ordered Defendant to serve, as a career offender, sixty years with release after service of 100% of the sentence on each count. The trial court merged the two counts and ordered Defendant to serve his sixty-year sentence consecutively to a prior Madison County sentence. Defendant filed a timely motion for new trial, which the trial court denied. Defendant now timely appeals.

## II. Analysis

### Trial counsel's conflict of interest

Defendant argues that the trial court erred in allowing Defendant's trial counsel to represent Defendant despite a conflict of interest. The State contends that, "[b]ecause the record did not reflect that counsel could not exercise 'his independent professional judgment free of competing interests,' the trial court did not commit error in not disqualifying counsel sua sponte."

At a pretrial motion hearing, the following exchange occurred:

[DEFENSE COUNSEL:] Your Honor, I'm in a bit of predicament. I'm not sure how to put this on the record maintaining what's required under the rules of professional conduct. But I'm in a situation where I think if I don't bring it to the [trial c]ourt's attention[,] I am completely interfering with the administration of justice in this situation that it could be -- I'd hate for this to come to the [trial c]ourt's attention for the first time on post-conviction.

Eleven o'clock today in the back discussing with my client his ideas of what this case was, not discussing the conversation, he decided that it would be in his best interest to physically assault me. So I'm now in a situation where I don't feel I can safely communicate with my client. Quite frankly --

THE [TRIAL] COURT: Well here's the situation, we'll make it safe. [Defendant], you've got to communicate with your attorney and you [have] to do so in a manner that does not put him, you know, at any kind of risk. He can't be worried about you and worrying about your case. So I'm going to order you, I know that sounds hollow, but to, you know, behave, refrain from it.

And I'm also going to put in place, [defense counsel], as far as I'm concerned, you know, you can discuss matters with him here in court, not in open court, I mean in terms of your privacy and your attorney/client, you know, privacy will be maintained. But I'm not requiring you to put yourself at any sort of risk or whatever if, in fact, you were assaulted, I say that because that's not before me today.

[DEFENSE COUNSEL]: I agree.

THE [TRIAL] COURT: And if there are criminal charges or administrative charges, they will resolve themselves as they need to and it really won't have anything to do with this case at all.

If it becomes a problem and [Defendant] -- and let me say for the record, every time he's in front of me and he's been in court he's always maintained the composure appropriate for being here. And as long as he does that he'll be here for every, you know, bit of his case. For some reason were he to choose not to, then he'll be removed and he'll forfeit his right to be present at the trial and hear all of the evidence against him.

But, I mean, so far he has done nothing in court here that has made me need to take any[ ]more strenuous actions than what I need to take. But now is just a warning and then that's all. You know, . . . we're not going to play games here. If you behave, I'll let you be here, be part of your trial and help your attorney. If you don't, then you'll forfeit that right and --

DEFENDANT . . . : I understand, judge.

THE [TRIAL] COURT: And so that's all I can do as far as that goes.

DEFENDANT . . . : I understand.

THE [TRIAL] COURT: All right. Well I'm going to accept your assurance that you'll behave and --

DEFENDANT . . . : But, your Honor, for the record, I ain't [sic] touched him.

THE [TRIAL] COURT: All right, again, for the record, that won't be my problem to discuss here today or probably another day it won't be.

DEFENDANT . . . : Yes, sir.

THE [TRIAL] COURT: But that's fine.

[DEFENSE COUNSEL]: Situation is for me, judge, I will not be speaking with him alone.

THE [TRIAL] COURT: That's fine. . . . I can't order you to take that on. But I also can't just derail the process here. He's retained you.

[DEFENSE COUNSEL]: Yep.

THE [TRIAL] COURT: You know, I gather he's not in a position to look for another lawyer or have another lawyer of his choosing, so.

[DEFENSE COUNSEL]: Happy to try it, judge.

THE [TRIAL] COURT: I know. And you have to bring it and we have to put it on the record because it's got to be dealt with sometime or another.

9

[DEFENSE COUNSEL]: Okay.

[THE STATE]: Judge, maybe in the interest of protecting the attorney/client privilege, since [trial counsel] needs somebody with him, that if the [trial c]ourt could order the courtroom deputies that or whoever is present not to disclose any of the conversation that they have to me or anybody else for that matter.

THE [TRIAL] COURT: Sure. If that -- I think it goes without saying but it's better to say it. If you have discussions with your client, there, you know, there will be deputies nearby. And if there are, they'll be order[ed] to maintain if they were to hear anything said between you that they're to keep that to themselves and . . . not share it with anyone. And it'd just be for security purposes only.

[DEFENSE COUNSEL]: Thank you, judge.

Under the Rules of the Tennessee Supreme Court, an attorney "shall not represent a client if the representation involves a concurrent conflict of interest." Tenn. Sup. Ct. R. 8, RPC 1.7(a). Concurrent conflicts of interest exist if "there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a)(2). "If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation, unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b)." *Id.* at cmt 4.

> Even where there is no direct adversity between clients, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are: what is the likelihood that a difference in interests will eventuate and, if it does, will it materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client?

*Id.* at cmt 8.

"In determining whether to disqualify an attorney in a criminal case, the trial court must first determine whether the party questioning the propriety of the representation met

10

its burden of showing that there is an actual conflict of interest." *State v. White*, 114 S.W.3d 469, 476 (Tenn. 2003). However, even if the party questioning the propriety of the representation fails to prove that there is an actual conflict of interest, disqualification can also be based on the appearance of impropriety. *State v. Culbreath*, 30 S.W.3d 309, 313 (Tenn. 2000). On appeal, the trial court's decision on disqualifying an attorney will not be reversed absent an abuse of discretion. *White*, 114 S.W.3d at 475.

Here, we conclude that the trial court did not err by failing to order defense counsel to withdraw sua sponte. The trial court clearly set out its reasons for continuing to allow defense counsel to represent Defendant despite the alleged altercation. The trial court noted that Defendant's case had been pending for several years and the case involved two other defendants. Defense counsel agreed that he could continue to adequately represent Defendant as long as he did not meet with Defendant alone. The trial court implicitly concluded that the alleged altercation between defense counsel and Defendant would not materially limit defense counsel's representation of Defendant. We agree with the trial court. Defendant is not entitled to relief on this issue.

**Invalid indictment**

Defendant asserts that the indictment was invalid because he was originally indicted on the promotion of manufacturing methamphetamine, a Class E felony, but a superseding indictment charged him with conspiracy to possess methamphetamine with the intent to sell or deliver within a drug-free zone, a Class B felony. Thus, Defendant argues that the indictment was improperly amended. He also argues that the indictment was invalid because "Pat Vincent[] has been the foreperson for the grand jury since 2011 and is wrongfully signing indictments here in Shelby County, TN in violation [of] Tenn. R. Crim. P. 6(g)(3)." The State counters that, "[b]ecause the record does not reflect an amendment of the indictment, there is no reversible error." The State also asserts that, "because a grand jury foreperson may serve longer than the two-year term, the trial court possessed jurisdiction to convict and sentence . . . [D]efendant."

Because Defendant failed to file a pretrial motion alleging these errors in the indictment, as required by Tennessee Rule of Criminal Procedure 12(b)(2)(B), Defendant has waived plenary review of this issue, and we will review for plain error. *See* Tenn. R. Crim. P. 12(f)(1) ("Unless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with[] . . . rules requiring such matters to be raised pretrial[.]").

Rule 36(a) of the Tennessee Rules of Appellate Procedure states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). "The failure to make a

11

contemporaneous objection constituted waiver of the issue on appeal." *State v. Gilley*, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008). However, "when necessary to do substantial justice," this court may "consider an error that has affected the substantial rights of a party" even if the issue was waived. Tenn. R. App. P. 36(b). Such issues are reviewed under plain error analysis. *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010).

Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted relief under plain error relief, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *Adkisson*, 899 S.W.2d at 641-42; *see also State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (Tennessee Supreme Court formally adopting the *Adkisson* standard for plain error relief). When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. *Smith*, 24 S.W.3d at 283. The defendant bears the burden of persuasion to show that he is entitled to plain error relief. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

The Tennessee Supreme Court stated the following regarding the State's power to seek superseding indictments:

> The power to seek a superseding indictment lies within th[e] broad discretion of the State. A superseding indictment is an indictment obtained without the dismissal of a prior indictment. 41 Am. Jur. 2d *Indictments and Informations* § 54 (1995). Where there has been no jeopardy on the first indictment, a grand jury may return a new indictment against an accused even though another indictment is pending. *Id.*; *see also United States v. Eshkol*, 108 F.3d 1025, 1027 (9th Cir. 1997). Although the State may not bring a superseding indictment to harass or intimidate the accused, a legitimate decision to bring a superseding indictment is uniquely within the State's authority. Thus, the State may obtain a superseding indictment at any time prior to trial without dismissing the pending indictment and may then select the indictment under which to proceed at trial.

*State v. Harris*, 33 S.W.3d 767, 771 (Tenn. 2000) (footnote omitted).

The technical record includes two indictments. The Shelby County Grand Jury returned indictment number 16 02794 on April 21, 2016, which charged Co-defendant Cole and Defendant with conspiracy to possess methamphetamine with the intent to sell

12

or deliver within a drug-free zone in counts one and two. This indictment also charged Co-defendant Cole with possession of methamphetamine with the intent to sell or deliver within a drug-free zone in counts three and four. On March 30, 2017, the Shelby County Grand Jury returned indictment number 17 01568, which charged Co-defendant Cole, Co-defendant Mullins, and Defendant with conspiracy to possess methamphetamine with the intent to sell or deliver within a drug-free zone in counts one and two. This indictment again charged Co-defendant Cole with possession of methamphetamine with the intent to sell or deliver within a drug-free zone. It is clear from the record that the superseding indictment only added Co-defendant Mullins to the charges; it did not alter the charges that the Shelby County Grand Jury brought against Defendant. Thus, the indictment was not amended, and the State chose to proceed under indictment number 17 01568, as was within the State's statutory discretion. *See Harris*, 33 S.W.3d at 771. Defendant has not established that a clear and unequivocal rule of law was breached. *See Adkisson*, 899 S.W.2d at 641.

Additionally, Defendant is not entitled to plain error relief based on his allegation that "Pat Vincent" unlawfully served as the Shelby County Grand Jury when he was indicted. There is no evidence in the record that Pat Vincent had previously served as the Shelby County Grand Jury foreperson besides Defendant's assertion of that fact in his brief and an anecdotal remark by the trial court at the motion for new trial hearing. The only mention of Pat Vincent's name in the technical record is on Defendant's original and superseding indictment. Therefore, "the record [does not] clearly establish what occurred in the trial court[.]" *See Adkisson*, 899 S.W.2d at 641.

**Evidentiary Issues**

Defendant argues that the trial court erred in admitting: (1) testimony from Andrew Brown; (2) Co-defendant Montez Mullins' confession; (3) text messages that Detective Gaia retrieved from Co-defendant Cole's three cell phones; and (4) marijuana confiscated from Mr. White's vehicle.

Generally, "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this [c]ourt will not interfere in the absence of abuse appearing on the face of the record." *State v. Plyant*, 263 S.W.3d 854, 870 (Tenn. 2008). A trial court abuses its discretion when it "applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *Id.* (citing *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

In order to be admitted into evidence, evidence must be relevant to an issue that the jury must decide. *State v. Thomas*, 158 S.W.3d 361, 394 (Tenn. 2005). "[E]vidence is relevant if it helps the trier of fact resolve an issue of fact." *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002) (quoting Neil P. Cohen, et al., *Tennessee Law of Evidence* §

4.01[4], at 4-8 (4th ed. 2000)).  The admissibility of evidence "lies within the discretion of the trial court," whose ruling "will not be overturned on appeal except upon a clear showing of an abuse of discretion." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978).

Rule 403 of the Tennessee Rules of Evidence provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  "Unfair prejudice" is defined as "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Banks*, 564 S.W.2d at 951 (quoting Advisory Committee Note to Federal Rule of Evidence 403).  This court has also stated that "[p]rejudice becomes unfair when the primary purpose of the evidence at issue is to elicit emotions of 'bias, sympathy, hatred, contempt, retribution, or horror.'"  *State v. Collins*, 986 S.W.2d 13, 20 (Tenn. Crim. App. 1998) (quoting M. Graham, *Handbook of Federal Evidence*, 182-83 (2d ed. 1986)).

*Investigator Brown's testimony*

Defendant argues that the trial court erred by allowing Investigator Brown to testify regarding his interpretation of the text messages on Co-defendant Cole's phones and how the messages related to prison gangs.  Defendant asserts that this testimony was not relevant and was not admissible under Tennessee Rule of Evidence 404(b)(3).  He also argues that the probative value of this testimony was not outweighed by the prejudice that he suffered.  The State first notes that "[D]efendant's claim against [Investigator] Brown and the 'gang-related monikers' is waived because he has changed his theory from trial to appeal."  The State correctly points out that, at trial, Defendant objected to this testimony on grounds of relevance, but on appeal, Defendant objects under Rule 404(b).

A defendant may not object to the introduction of evidence, such as testimony, on one ground at trial but rely on a different ground on appeal.  *See State v. Banes*, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993) ("An appellant cannot change theories from the trial court to the appellate court.").  Therefore, we will only address Defendant's assertion that Investigator Brown's statements about prison gangs were irrelevant.  We conclude that Investigator Brown's statements were relevant, and the trial court did not abuse its discretion by allowing the testimony.  As we set out above, relevant evidence "helps the trier of fact resolve an issue of fact." *James*, 81 S.W.3d at 757.

Here, Investigator Brown's testimony gave an interpretation of some of the text messages found on Co-defendant Cole's cell phones.  Based on Investigator Brown's interpretation of the text message signatures, the jury could have inferred that one person was messaging Co-defendant Cole using the various gang-related signatures.  The jury

14

could have also inferred that Defendant was messaging Co-defendant Cole using the gang-related signatures because Defendant and Co-defendant Cole were in a relationship, and Co-defendant Cole saved the contact who used the gang-related signatures as "BooBear" in her contact list. Thus, Investigator Brown's testimony assisted the jury in making factual determinations in this case, and the trial court did not err by admitting it.

*Co-defendant Mullins' confession*

Defendant argues that the trial court abused its discretion by admitting Co-defendant Mullins' confession through Detective Christian's testimony because the confession violated Tennessee Rule of Evidence 801 and 802. The State responds that Defendant cannot establish that a substantial right was affected because he was not prejudiced by the admission of the confession. The State points out that "all three defendants denied a conspiracy or an agreement to possess the methamphetamine to sell and deliver and relied on [C]o-defendant Mullins' statement to present that mutually agreeable defense." We note that Defendant did not lodge a contemporaneous objection when the State admitted the audio recording and transcripts of Co-defendant Mullins' statement to Detective Christian. Defendant has waived plenary review of this issue, and we will review only for plain error.

Tennessee Rule of Evidence 802 states that hearsay statements are not admissible "except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. A party-opponent admission is not excluded by the rule against hearsay. Tenn. R. Evid. 803(1.2). A party-opponent admission is "[a] statement offered against a party that is . . . the party's own statement in either an individual or a representative capacity[.]" *Id.*

Here, Defendant has not established that a substantial right was affected by the admission of Co-defendant Mullins' statement to Detective Christian into evidence. *See Adkisson*, 899 S.W.2d at 641. We agree with the State that Defendant was not prejudiced by the introduction of Co-defendant Mullins' confession. In the confession, Co-defendant Mullins stated that Defendant's only involvment in the offenses was by introducing Co-defendant Mullins to Co-defendant Cole at some point in the past and when Co-defendant Mullins called Defendant after he could not reach Co-defendant Cole. Thus, the confession served to exculpate Defendant. Defendant is not entitled to plain error relief on this ground.

*Admission of text messages*

Defendant argues that the trial court erred in admitting the text messages that Detective Gaia retrieved from Co-defendant Cole's three cell phones because the messages were irrelevant, cumulative, and prejudicial because the State did not establish that Defendant received any of the messages, citing Tennessee Rule of Evidence 403.

15

The State responds that, "[b]ecause the text messages were relevant to establish . . . [D]efendant's identity and his involvement in the conspiracy, . . . [D]efendant has failed to establish plain error and he is entitled to no relief." After reviewing the record, we note that Defendant did not object to the admission of the CDs that contained the data from Co-defendant Cole's cell phones. Defendant has waived plenary review of this issue, and we will review only for plain error.

We conclude that Defendant has not established that "a clear and unequivocal rule of law [was] breached" by the admission of the text messages and by Detective Gaia's testimony regarding the messages. *See Adkisson*, 899 S.W.2d at 641. The text messages were clearly relevant to the State's theory of the case. The messages made it more likely than not that at least two people conspired to possess the package of methamphetamine with the intent to sell it or deliver it to another person. The introduction of the text messages did not breach Tennessee Rule of Evidence 403 because the probative value of the messages was not substantially outweighed by any unfair prejudice to Defendant. The majority of the messages were not sent to a contact in Co-defendant Cole's phone listed as Defendant—the jury had to infer that Co-defendant Cole listed Defendant as "BooBear" and similar references in her phone. Additionally, the probative value of the messages was not substantially outweighed by "needless presentation of cumulative evidence" because Co-Defendant Cole used different contact names for Defendant in the three phones and Defendant used different signatures in his text messages. Thus, Defendant is not entitled to plain error relief on this ground.

*Admission of marijuana*

Defendant contends that the trial court erred in admitting the marijuana because it was irrelevant and prejudicial.[6] The State responds that Defendant has waived plenary review of this issue by failing to lodge a contemporaneous objection. The State argues that Defendant is not entitled to plain error relief on this ground because "consideration of any error is not necessary to do substantial justice" due to the trial court's finding that the marijuana was not connected to Defendant's alleged offenses.

---

[6] Defendant phrases his statement of this issue as "WHETHER IT WAS PROSECUTORIAL MISCONDUCT FOR THE STATE TO INTRODUCE THE MARIJUANA IN THE BOX WITH THE OTHER EVIDENCE PRESENTED DURING THE TRIAL?" However, in his analysis, Defendant only presents case law to support his contention that the trial court erred in admitting the marijuana based on the Tennessee Rules of Evidence. Therefore, to the extent that Defendant attempted to raise a stand-alone claim of prosecutorial misconduct based on the State's motion that the trial court admit the marijuana into evidence, we conclude that the claim is waived for failure to cite to any authority to support Defendant's position. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

16

During Detective Gaia's testimony, the State admitted into evidence a bag that contained approximately eight grams of marijuana. Detective Gaia testified that he found the marijuana in the console of Mr. White's vehicle; he noted that he did not find the marijuana in the box that was delivered to Co-defendant Cole's residence. On cross-examination, Detective Gaia stated that the State did not charge anyone for the possession of the marijuana.

We agree with the State that Defendant is not entitled to plain error relief on this ground. While the trial court stated during the hearing on Defendant's motion for new trial that the marijuana should not have been admitted, the trial court also noted that the State made it clear that the marijuana was not connected to Defendant's current charges. Consideration of this issue is not necessary to do substantial justice. *See Adkisson*, 899 S.W.2d at 642.

### Failure to instruct the jury during Detective Gaia's testimony

Defendant argues that the trial court erred in allowing Detective Gaia to testify that he sent the final text message from Co-defendant Cole's LG Escape phone without instructing the jury on credibility of witnesses. The State responds that Defendant did not request a special instruction relative to Detective Gaia's testimony from the trial court. Further, the State asserts that, "[e]ven if such a request had been made, it would have been unnecessary because the trial court properly instructed the jury regarding the credibility of all trial witnesses including Detective Gaia."

During cross-examination, Detective Gaia agreed that he sent a text message from Co-defendant Cole's LG phone, which stated the following: "What do you want me to do with it?" Detective Gaia explained that he sent the text message in an attempt "to get the person that [he] believe[d] that was going to pick [the methamphetamine] up [to] come and pick it up." Defendant did not lodge a contemporaneous objection or move the trial court to instruct the jury during Detective Gaia's cross-examination. Therefore, Defendant has waived plenary review of this issue, and we will review only for plain error.

First, we note that the technical record includes the jury instructions, which contain the following instruction on the credibility of witnesses:

> You are the exclusive judges of the credibility of the witnesses and the weight to be given to either of their testimony. If there are conflicts in the testimony of the different witnesses you must reconcile them, if you can, without hastily or rashly concluding that any witness has sworn falsely, for the law presumes that all witnesses are truthful. In forming your opinion as to the credibility of a witness, you may look to the proof, if

17

any, of his or her general character, the evidence, if any, of the witness' reputation for truth and veracity, the intelligence and respectability of the witness, his or her interest or lack of interest in the outcome of the trial, his or her feelings, his or her apparent fairness or bias, his or her means of knowledge, the reasonableness of his or her statements, his or her appearance and demeanor while testifying, his or her contradictory statements as to material matters, if any are shown, and all the evidence in the case tending to corroborate or to contradict him or her.

On appeal, this court must presume that the jury followed the trial court's instructions. *See State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998). We conclude that the trial court did not breach a "clear and unequivocal rule of law" by failing to instruct the jury on witness credibility during or after Detective Gaia's testimony. *See Adkisson*, 899 S.W.2d at 641. Defendant is not entitled to plain error relief on this ground.

### *Bruton* violation

Defendant alleges that the trial court erred in admitting Co-defendant Mullins' confession through Detective Christian's testimony because the confession violated Defendant's right to confront the State's witnesses because Co-defendant Mullins did not testify at the trial. He asserts that "[t]he State's use of Detective Christian's hearsay, opinion based testimony was to try to further strengthen the State's theory of an alleged conspiracy between the defendant(s)." Defendant acknowledges that he did not lodge a contemporaneous objection to the admission of Co-defendant Mullins' confession. The State only addresses the introduction of Co-defendant Mullins' statement under the context of Defendant's severance argument.

In *Bruton v. United States*, 391 U.S. 123, 126 (1968) the United States Supreme Court held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [the defendant]'s guilt, admission of [a co-defendant]'s confession in this joint trial violated [the defendant']s right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." The Tennessee Supreme Court has applied this holding to Tennessee case law. In *State v. Elliott*, the supreme court stated: "where[] the confession of one non-testifying codefendant contradicts, repudiates, or adds to material statements in the confession of the other non-testifying codefendant, so as to expose the latter to an increased risk of conviction or to an increase in the degree of the offense with correspondingly greater punishment, the latter codefendant is entitled to test the veracity of the statements in the confession of his codefendant." 524 S.W.2d 473, 478 (Tenn. 1975).

18

In *Bruton*'s progeny, the United States Supreme Court distinguished cases where "the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendant's own testimony)" from the facts of *Bruton*, where the co-defendant's confession expressly implicated the defendant. *Richardson v. Marsh*, 481 U.S. 200, 208 (1987) (footnote omitted). The Supreme Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211. Further, this court noted that "[p]ost-*Bruton* cases, as well as the ABA Standards, make it clear, however, that the rule in *Bruton* does not apply to confessions which [d]o not implicate the non-confessing defendant[.]'" *Dorsey v. State*, 568 S.W.2d 639, 642 (Tenn. Crim. App. 1978) (internal citations omitted).

Because Defendant did not lodge a contemporaneous objection to the introduction of Co-defendant Mullins' confession, we will review this issue for plain error. *See State v. Tavarski Childress*, No. W2004-02545-CCA-R3-CD, 2006 WL 3804418, at *6 (Tenn. Crim. App. Dec. 27, 2006) (applying the plain error test to an alleged *Bruton* violation), *perm. app. granted* (Tenn. May 21, 2007) *app. dismissed* (Tenn. Apr. 14, 2008).

Here, we conclude that Defendant has not established that the introduction of Co-defendant Mullins' confession breached a clear and unequivocal rule of law. *See Adkisson*, 899 S.W.2d at 641. In the statement, Co-defendant Mullins alleged that another inmate, Angel, agreed to pay him $600 for providing an address in Memphis that Angel could send a package to. Co-defendant Mullins stated that he told Co-defendant Cole that the package contained jewelry. Co-defendant Mullins stated that Defendant's only involvement was that Co-defendant Mullins contacted Defendant when he could not reach Co-defendant Cole about the delivery of the package. Co-defendant Mullins' statement exculpated Defendant because Co-defendant Mullins took responsibility for conspiring to ship the methamphetamine to Co-defendant Cole's residence with Angel. Thus, the introduction of the statement did not violate *Bruton* because the statement exculpated Defendant. *See Dorsey*, 568 S.W.2d at 642. Defendant is not entitled to plain error relief on this ground.

## Motion to sever

Additionally, Defendant contends that the trial court erred in denying Defendant's motion to sever his case from Co-defendant Cole and Mullins. The State responds that this issue is waived because Defendant failed to move to sever his case from Co-defendant Cole and Mullins prior to trial under Tennessee Rule of Criminal Procedure 12(b)(2)(E). The State also argues that Defendant is not entitled to plain error relief.

19

At the beginning of the second day of Defendant's trial, the following exchange occurred:

THE [TRIAL] COURT: Are we ready for the jury?

DEFENDANT . . . : Excuse me, your Honor. I'd like to address the Court on the record, your Honor, on my own behalf.

THE [TRIAL] COURT: On, on about what?

DEFENDANT . . . : Well, your Honor, I feel like at this time that this case should be severed, your Honor. Because my co-defendant's lawyer in opening statement had initiated this love makes you do strange things, build his case on love which is saying that me and her in a relationship that I'm already guilty. And apparently that is not the same defense.

THE [TRIAL] COURT: I appreciate your input. Two things. First of all, share with your attorney and I'm going to let him make the motions.

DEFENDANT . . . : Your Honor, I tried to, your Honor.

THE [TRIAL] COURT: Wait a minute. For reasons that we [are] not going to have to get into like that, your communication situation is a little complicated. But second of all, and this is what I would rule no matter what, no matter who brought this to me, what lawyers say, and you heard me tell the jury that, what lawyers say is not evidence. So unless something were proved about a relationship between any of you with anybody else, and again, maybe it was, maybe it wasn't, it will be for the jury to decide whether that's been proven by the evidence. They're not to -- if it, you know, they can't take what the lawyers say and say oh, that happened. So I understand your concern. But --

. . . .

DEFENDANT . . . : I understand. I just wanted to put it on record in open court that I'm having concerns about these issues that I have.

THE [TRIAL] COURT: I appreciate it. I'm sure [Co-defendant] Mullins and [Co-defendant] Cole are having concerns as well. And we're all going to have concerns until the jury resolves those concerns for us.

20

Tennessee Rule of Criminal Procedure 8(c)(1) provides that "[a]n indictment, presentment, or information may charge two or more defendants . . . if each of the defendants is charged with accountability for each offense included[.]" Tenn. R. Crim. P. 8(c)(1). According to Tennessee Rule of Criminal Procedure 14, a trial court shall grant a severance of defendants before trial if "the court finds a severance necessary to protect a defendant's right to a speedy trial or appropriate to promote a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(A). A trial court may grant a severance of defendants during the trial if, "with consent of the defendants to be severed, the court finds a severance necessary to achieve a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(B). A motion under Tennessee Rule of Criminal Procedure 14 to sever defendants must be made prior to trial. Tenn. R. Crim. P. 12(b)(2)(E). Failure to raise a severance motion prior to trial waives plenary review of the issue. Tenn. R. Crim. P. 12(f).

The grant or denial of a motion for severance of defendants is a matter that rests within the sound discretion of the trial court, and we will not disturb the trial court's ruling absent clear abuse of that discretion. *State v. Dotson*, 254 S.W.3d 378, 390 (Tenn. 2008). "Where a motion for severance has been denied, the test to be applied in determining whether the trial court abused its discretion is whether the defendant was 'clearly prejudiced' in his defense as a result of being tried with his codefendant[.]" *State v. Price*, 46 S.W.3d 785, 803 (Tenn. Crim. App. 2000). The record must demonstrate that "the granting of a severance became a judicial duty" before an accused is entitled to a reversal of his conviction. *State v. Burton*, 751 S.W.2d 440, 447 (Tenn. Crim. App. 1988) (quoting *Hunter v. State*, 440 S.W.2d 1, 6 (Tenn. 1969)).

We note that Defendant did not file a motion to sever his case from his co-defendants prior to trial as required by Tennessee Rule of Criminal Procedure 12(b)(2)(E). Therefore, we must analyze this issue under plain error review. *See* Tenn. R. Crim. P. 12(f). We conclude that Defendant is not entitled to plain error relief on this ground because consideration of the error is not "necessary to do substantial justice." *See Adkisson*, 899 S.W.2d at 642. As we have previously concluded, the State's introduction of Co-defendant Mullins' statement did not violate *Bruton* because the statement exculpated Defendant. Further, this court has previously held that, "[w]hile 'mutually antagonistic' defenses may mandate a severance in some circumstances, they are not prejudicial per se." *State v. Russell David Farmer*, No. 03C01-9206-CR-00196, 1993 WL 247907, at *4 (Tenn. Crim. App. July 8, 1993) (quoting *Zafiro v. United States*, 506 U.S. 534 (1993)). Thus, while Defendant may not have appreciated defense counsel for Co-defendant Mullins or Co-defendant Cole alleging that Defendant had a relationship with Co-defendant Cole, Defendant has not established that he was "clearly prejudiced" by his joint trial. *See Price*, 46 S.W.3d at 803. Defendant is not entitled to plain error relief on this ground.

21

## Sufficiency of the evidence

Defendant asserts that there was insufficient evidence presented at trial for a rational juror to have found him guilty beyond a reasonable doubt of two counts of conspiracy to possess with the intent to sell or distribute methamphetamine within a drug-free zone. He claims that the State's evidence "was based on fabricated evidence and false testimony by Detective Mark Gaia." The State argues that it was within the jury's purview to find Detective Gaia's testimony to be credible and that the evidence was sufficient to find Defendant guilty.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

Conspiracy is committed when "two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense." Tenn. Code Ann. § 39-12-103(a) (2016). "No person may be convicted of conspiracy to commit an offense, unless an overt act in pursuance of the conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." Tenn. Code Ann. § 39-12-103(d) (2016).

> Conspiracy is a continuing course of conduct that terminates when the objectives of the conspiracy are completed or the agreement that they be completed is abandoned by the person and by those with whom the person conspired. The objectives of the conspiracy include, but are not limited to,

22

> escape from the crime, distribution of the proceeds of the crime, and measures, other than silence, for concealing the crime or obstructing justice in relation to it.

Tenn. Code Ann. § 39-12-103(e)(1) (2016). "While the essence of the offense of conspiracy is an agreement to accomplish a criminal or unlawful act, . . . the agreement need not be formal or expressed, and it may be proven by circumstantial evidence." *State v. Pike*, 978 S.W.2d 904, 915 (Tenn. 1998) (internal citation omitted).

Methamphetamine is a Schedule II controlled substance. Tenn. Code Ann. § 39-17-408(d)(2) (2016). It is a criminal offense for a person to knowingly "[p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4) (2016).

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(b) (2016). "Proof that a possession is knowing will usually depend on inference and circumstantial evidence." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995). "The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).

With regard to a determination of intent to sell or deliver, proof of intent usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence. *See Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973); *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983) (observing that a jury may derive a defendant's intent from both direct and circumstantial evidence). The jury may infer "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419 (2016).

When the evidence is viewed in the light most favorable to the State, we conclude that the evidence was sufficient for a rational juror to have found Defendant guilty of conspiracy to possess methamphetamine within a drug-free zone with the intent to sell or deliver. Detective Gaia testified that he learned that a package that contained a controlled substance was scheduled to be delivered to "Bailey Green" at Co-defendant Cole's address. Detective Gaia opened the package and observed that it contained a pound of

methamphetamine. Co-defendant Cole accepted the package containing methamphetamine during the controlled delivery. In Co-defendant Cole's residence, Detective Gaia and other officers found a photograph of Defendant, letters from Defendant to Co-defendant Cole, and prepaid credit/debit cards. Detective Gaia also found a computer, which Co-defendant Cole had used to track the package that contained methamphetamine on the FedEx website. Detective Gaia testified that Co-defendant Cole's residence was located in a drug-free zone.

Additionally, Detective Gaia recovered three cell phones. A phone number labeled as "Line Boo Other" called Co-defendant Cole's LG phone continuously during Detective Gaia's search of Co-defendant Cole's residence. After Mr. White arrived at the residence, Detective Gaia observed that the same phone number was calling Mr. White's phone but was labeled as "J" in Mr. White's phone. On Co-defendant Cole's three phones, Detective Gaia found several photographs of Defendant in a prison cell that had been sent to Co-defendant Cole from various phone numbers. These phone numbers were sometimes labeled as "New BooBear" or "Line Boo Other" in Co-defendant Cole's contact list. In text message exchanges, Co-defendant Cole continually referred to the recipient of her messages at the phone numbers as "BooBear." The recipient used signatures such as "Da Junk Yard[,]" "COUNTRY CRAZY[,]" or "L.L.K.N. J.Y.D." The jury could have inferred that Co-defendant Cole referred to Defendant as "BooBear" and that they were in a romantic relationship because Co-defendant Cole had photographs of Defendant in her residence and on her phones. Thus, the jury could have also inferred that Defendant was communicating with Co-defendant Cole through these text message exchanges and phone calls. Additionally, several text messages between Co-defendant Cole and Defendant's phone numbers referenced transferring money into accounts or purchasing prepaid credit/debit cards. It was the jury's prerogative to credit Detective Gaia's testimony regarding his investigation and Co-defendant Cole's phone records, and we will not reweigh the evidence. *Bland*, 958 S.W.2d at 659.

Investigator Brown testified that he observed Defendant flushing a cell phone and charger down the toilet in his cell at Riverbend Maximum Security Prison on the same day that Detective Gaia observed "Line Boo Other" calling Co-defendant Cole's cell phone. Investigator Brown also testified that inmates frequently transferred money into prepaid credit/debit card accounts through PayPal, Kroger, or Green Dot cards in order to purchase contraband such as "[t]obacco products, narcotics, cell phones, [and] weapons."

The jury could have inferred that two or more people—including Co-defendant Cole, Co-defendant Mullins, Defendant, and Angel—acted for the purpose of facilitating the possession of methamphetamine with the intent to sell or deliver and agreed that Co-defendant Cole would engage in conduct that constituted possession of methamphetamine with the intent to sell or deliver. Co-defendant Mullins admitted to Detective Christian that he asked Co-defendant Cole if he could send a package to her house that he knew

24

contained methamphetamine. Co-defendant Cole tracked the package on her computer through the FedEx website and accepted the package during the controlled delivery. Shortly after delivery, she texted Defendant to inform him that the package had been delivered. Agreeing to accept the package and accepting the package were overt acts in pursuance of the conspiracy. *See* Tenn. Code Ann. § 39-12-103(d) (2016).

Additionally, Defendant acted to promote or facilitate the conspiracy to possess methamphetamine for the purpose of selling or delivering by coaching Co-defendant Cole on what to tell investigators and her attorney about her involvement in the conspiracy. The jury could have inferred from the jail phone call recordings that Defendant told Co-defendant Cole to claim that she was unaware of the contents of the package. Defendant also reassured Co-defendant Cole multiple times that Co-defendant Mullins would admit to organizing the conspiracy to possess the methamphetamine in an affidavit. Thus, Defendant acted to further objectives of the conspiracy—to conceal the crime and to obstruct justice in relation to the crime. *See* Tenn. Code Ann. § 39-12-103(e)(1) (2016). Defendant is not entitled to relief on this ground.

### Prosecutorial misconduct

Additionally, Defendant contends that the State committed prosecutorial misconduct by referring to Defendant's alleged gang ties, commenting on the truth or falsity of portions of Co-defendant Mullins' testimony, and mentioning Defendant's brother, Mr. White, during closing argument. Defendant asserts that "the State's use of these statements in closing arguments were to leave an impression of . . . [D]efendant's character[.]" The State argues that Defendant is not entitled to plain error relief because "the prosecutor's comment about [Mr. White] was based upon the evidence at trial, relevant to whether a conspiracy existed among . . . [D]efendant, [C]o-defendant Cole, and [C]o-defendant Mullins, and a reasonable inference of the evidence." The State also argues that "[t]he prosecutor's comment about gang monikers was part of the evidence, relevant to establish . . . [D]efendant's identity as a co-conspirator, and therefore a proper basis for comment during closing argument."

Defendant objects to the following portions of the State's closing argument:

> Now, I spent so much time, so much time to having been for the statement of February 22nd, I think that was the date, 2017, from [Co-defendant] Mullins. I would of left it for the fact that when the detective said what, her phone was blowing up. Had the 615 and had the number that was three digit who was calling the cell. Had a 615 number that was blowing her phone up and it is right there, you can just look at them. 917-3749, Boo's other line. Kept calling, kept calling, kept calling.

25

And then low and behold who shows up? Dustin White, . . . [D]efendant's brother. And his phone is blowing up. So the detective looks into that phone and then the moniker J, number 615-917-3749 number is calling him too. And what are the chances?

. . . .

And then you have [Co-defendant] Mullins. Take him at his word. ["]I had that sent.["] That part I can believe. But when he says nobody else knew nothing [sic] about it, ladies and gentlemen, that's a bald-faced lie plain and simple. Why he would step up I can't imagine. But you did hear some proof as to [Defendant]'s relationship to Mr. Thompson and about the whole Junk Yard Dog thing, prison gang, some sort of loyalty.

But from day -- I won't say day one but from day three you hear [Defendant] telling them dropping [Co-defendant Mullin]'s name in a jail phone calls putting him in next to it. It's just like Bonnie and Clyde, they were in a, in a armed robbers in law, robbing banks left and right, her being -- does she get a break, you know, she's just following along (inaudible), she got gunned down too.

Defense counsel did not lodge a contemporaneous objection to this portion of the State's closing argument. Therefore, we will review this issue for plain error. We have previously set out the case law discussing plain error review.

The trial court has wide discretion in controlling the course of arguments and will not be reversed absent an abuse of discretion. *Terry v. State*, 46 S.W.3d 147, 156 (Tenn. 2001). Closing argument by a prosecutor "is a valuable privilege that should not be unduly restricted." *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001). That said, Tennessee courts have recognized numerous prosecutorial arguments as improper. It is improper for a prosecutor to engage in derogatory remarks, appeal to the prejudice of the jury, misstate the evidence, or make arguments not reasonably based on the evidence. *State v. Banks*, 271 S.W.3d 90, 131 (Tenn. 2008).

In *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003), this court listed "five general areas of prosecutorial misconduct" that can arise during closing argument: (1) intentionally misleading or misstating the evidence; (2) expressing a personal belief or opinion as to the truth or falsity of the evidence or defendant's guilt; (3) making statements calculated to inflame the passions or prejudices of the jury; (4) injecting broader issues than the guilt or innocence of the accused; and (5) intentionally referring to or arguing facts outside the record that are not matters of common public knowledge. "In determining whether statements made in closing argument constitute reversible error,

26

it is necessary to determine whether the statements were improper and, if so, whether the impropriety affected the verdict." *State v. Pulliam*, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996).

The State's implication that Defendant referred to his gang connections in his signatures while communicating with Co-defendant Cole was fairly based on the proof admitted at trial. The State presented text messages sent by Co-defendant Cole to "BooBear" and other nicknames. The recipient of these text messages sent photographs of Defendant in his jail cell to Co-defendant Cole. The recipient used signatures such as L.L.K.N. J.Y.D., which meant "Long Live King Neal Junk Yard Dog[.]" Investigator Brown testified that "Long Live King Neal" referred to the founder of the Traveling Vice Lords, Neal Wallace, and that "Junk Yard Dog" referred to a faction of the Traveling Vice Lords that was organized by Charles Thompson, also known as "Country." Defendant is not entitled to plain error relief on this ground because he has not established that the State's closing argument breached a clear and unequivocal rule of law. *See Adkisson*, 899 S.W.2d at 641.

The prosecutor's argument that the jury should take Co-defendant Mullins "at his word" that he arranged to send a package to Co-defendant Cole's address but that Co-defendant Mullins' testimony that he acted alone in conspiring to possess the methamphetamine was "a bald-faced lie plain and simple" was an improper opinion on the truth or falsity of the evidence. However, we conclude that consideration of the error is not "necessary to do substantial justice." *Adkisson*, 899 S.W.2d at 642. The prosecutor's improper comment was contained in a small portion of the State's closing argument, there is no evidence that the State had an improper intent in making the comment. *See Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). The State's comment on the truth or falsity of Co-defendant Mullins' statement was not plain error in need of reversal.

Lastly, we agree with the State that the reference to Defendant's brother, Mr. White, during the State's closing argument was a fair inference based on the evidence introduced at trial that the individual who called Co-defendant Cole's phone during the controlled buy was the same individual who called Mr. White's phone. The comment supported the State's argument that Defendant, Co-defendant Cole, and Co-defendant Mullins conspired to possess methamphetamine with the intent to sell or deliver the controlled substance. Defendant is not entitled to plain error relief on this ground because he has not established that the State's closing argument breached a clear and unequivocal rule of law. *See Adkisson*, 899 S.W.2d at 641.

## III. Conclusion

After a thorough review of the facts and applicable case law, we affirm the trial court's judgments.

_____
ROBERT L. HOLLOWAY, JR., JUDGE